**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Tommie Lee NEWTON and Willie Stokes, Defendants-Appellants.**

**No. 74–1560.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1974.

Decided Feb. 13, 1975.

Rehearing Denied June 18, 1975.

Robert S. Bailey, Chicago, Ill., for defendants-appellants.

James R. Thompson, U. S. Atty., Gary L. Starkman and Ann C. Tighe, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendants-appellants Tommie Lee Newton and Willie Stokes were tried and convicted on a single count of an indictment charging a violation of Title 21, U.S.C. § 841(a)(1).[1] The count charged that defendants "knowingly and intentionally did possess with intent to distribute approximately 1,077 grams [2.2 pounds] of a substance containing heroin, a Schedule I Narcotic Drug Controlled Substance." Following defendants' knowing written waiver of trial by jury, the case was tried to the court. Ms. Newton was sentenced to three years imprisonment with three years special parole to follow. Mr. Stokes was sentenced to five years imprisonment with three years special parole to follow. Both defendants have appealed.

The essential issue presented for review concerns the validity of the search and seizure of the heroin in question and the court's denial of defendants' motion to suppress the heroin seized in the initial search of Ms. Newton's luggage on July 29, 1973, at Chicago O'Hare Airport. Following an evidentiary hearing the trial court expressly predicated its denial

1. § 841. Prohibited acts A—Unlawful acts
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; * * *.

upon the lack of governmental participation in the search.[2]

The undisputed facts reveal the following relevant circumstances surrounding the warrantless search and seizure, as well as the warrantless arrest of defendants.

On Sunday, July 29, 1973, a Continental Airlines flight from Los Angeles, California, arrived at O'Hare Airport in Chicago, Illinois, about 8:00 a. m. Several pieces of luggage were misplaced and did not arrive with the rest of the luggage from the flight. Among the misplaced bags was a blue suitcase which had been checked by Ms. Newton. Shortly after 8:00 a. m. Ms. Newton went to Continental's lost and found baggage counter to report that her luggage had been misplaced. She spoke with Ms. Shava Spector, a Continental employee, who sought to complete a lost baggage claim slip for Ms. Newton. Spector requested Newton's claim check number, a description of the lost bag, and the name, address and telephone number of the claimant. Newton refused to provide the requested information and left the counter.

About thirty minutes later, Ms. Newton, accompanied by Willie Stokes, returned to the claim counter. After a dispute with Ms. Spector concerning a blue suitcase at the counter, which was shown not to belong to Newton, Newton handed Spector her claim check and Spector began to copy its numbers on the lost baggage claim form. Stokes took the claim check from Spector and told Newton, "Don't tell her anything. Don't give her any information." After learning that the next Continental flight would arrive about 2:00 p. m. Newton and Stokes advised Spector that they would wait around for the bag. About 10:00 a. m. an unnamed male person called Continental inquiring about the

same luggage but refused to leave his telephone number so that his call could be returned.

At about 10:30 a. m., Ms. Spector, being suspicious because of these circumstances, related the events to her superior, Mr. Lauren Anderson, supervisor of passenger service. Ms. Spector had also called the Drug Enforcement Administration (DEA) in Washington, D.C., and related the events concerning Ms. Newton's bag. She was told that a local agent on duty in Chicago would be notified. Anderson believed that defendants' conduct was "different," and told Ms. Spector that he would attempt to locate the bag and open it to ascertain its contents. Anderson testified at the hearing concerning Civil Aeronautics Board Regulation No. 142 which he said allowed luggage searches at the sole discretion of airline personnel.

About 1:30 p. m. DEA Agents David Haight and Robert Fanter arrived at the airport. They were informed by Spector and Anderson of the morning's events. Anderson told the agents he was going to meet the 2:00 p. m. flight from Los Angeles to see whether the suitcase was on the plane, and of his plan to search the luggage. They waited in a room at the terminal where the bag was brought and where they met another Continental employee, Elmer Rossini.

At that time Agent Haight told the Continental employees that the agents had no authority to conduct such a search. Haight testified that he reached this conclusion in view of the total absence of any probable cause to believe the suitcase contained contraband. Anderson had the claim check number given by Newton and matched it with the suitcase claim check. Anderson and Rossini opened the suitcase with a passkey in the presence of Agents Haight and Fanter. Anderson searched the suitcase

---

2. Newton and Stokes, together with two other individuals, were initially charged in a three-count indictment with conspiracy and substantive offenses in violation of 21 U.S.C. §§ 841(a)(1) and 846. Following the evidentiary hearing on the motion to suppress by all defendants, the trial court denied the motion as to Newton and Stokes, but granted it as to the two other defendants. Counts one and three of the indictment were dismissed on motion by the government. Newton and Stokes thereupon proceeded to trial on the substantive count two.

and withdrew a brown paper bag which contained two plastic bags filled with a brown powdery substance. Anderson handed the two plastic bags to Haight. Agent Haight was prepared to conduct a field test on the brown substance with a Marquis Reagent. He field-tested the substance at that time, producing a positive reaction, indicating the presence of heroin. Anderson then replaced the brown paper bag with its brown substance in the suitcase, closed it and sent it to the baggage claim area.

At about 3:00 p. m., defendants Newton and Stokes claimed the suitcase from the public viewing area. Both were arrested by the DEA Agents as they attempted to leave the airport with the bag in their possession. They were charged with possession of heroin with intent to distribute, as hereinabove set out.

## FOURTH AMENDMENT QUESTION

At the outset, we are faced with the question of whether the search of defendants' luggage at O'Hare Airport on July 29, 1973, was in violation of defendants' Fourth Amendment protections against unreasonable searches and seizures[3] and required the suppression of the use of the seized matter in a subsequent criminal prosecution. The controlling subsidiary question here is whether, under the facts of this case, the subject search was a government search within the protection of the Fourth Amendment or a private search to which the amendment is not applicable.

To carry out the limitations imposed by the Fourth Amendment the Supreme Court has established the rule requiring in a federal criminal prosecution the suppression of evidence seized in violation of a defendant's Fourth Amendment rights.

Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). This exclusionary rule was made applicable to the states in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The exclusionary rule has given rise to much judicial controversy over the years. We shall not attempt a comprehensive review of the sharp judicial dispute, debate and disagreement it has engendered.

Illustrative of this cleavage and the changing concepts of the exclusionary rule is Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), where a sharply divided court rejected the validity of the so-called "silver platter doctrine" of Lustig v. United States, 338 U.S. 74, 79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949).[4] In *Elkins*, Mr. Justice Stewart repeated the time-honored observation that "[m]ost of what has been said in opposition to the rule was distilled in a single Cardozo sentence—'The criminal is to go free because the constable has blundered.' People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 [1926]." 364 U.S. at 216–217, 80 S.Ct. at 1444. He also noted at greater length the well-known statement of Professor Wigmore which concludes: " 'Our way of upholding the Constitution is not to strike at the man who breaks it, but to let off somebody else who broke something else.' 8 Wigmore, Evidence (3d ed. 1940), § 2184." *Id.* at 217, 80 S.Ct. at 1444.

In United States v. Issod, 7 Cir., 508 F.2d 990 (1974), we set out certain applicable guidelines testing a motion to suppress narcotics on the ground that they had been seized in violation of defendant's Fourth Amendment rights in a criminal prosecution for a violation of § 841(a)(1), *supra*. *Issod* involved an air-

---

**3.** AMENDMENT IV. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**4.** In *Elkins*, Mr. Justice Stewart, writing for the majority, marshalled and reviewed many of the cases concerned with the exclusionary rule. Mr. Justice Frankfurter, writing for the minority, did the same in defense of the "silver platter doctrine" which he had authored in *Lustig*.

line's search in San Diego, California, where two trunks were searched without a warrant. The trunks were assigned to Milwaukee, Wisconsin, where a subsequent warrantless search was made. In California a state narcotics agent was concerned. In Milwaukee a federal narcotics agent was involved. The admissibility of the challenged evidence depended upon the validity of both the search in California and the seizure in Wisconsin.

In *Issod*, Judge Tone, speaking for our court, summarized the applicable cases and concluded that an inspection by a carrier without the participation of state or federal authorities is not a government search. The crux of the holding was that the issue is to be determined by the facts surrounding the search. 508 F.2d pp. 993–994, citing cases.

The circumstantial chain of connection between the airline employees and the federal agents is convincing. The federal authorities were first notified in Washington, D. C., and they dispatched two agents from Chicago to the airport. They were expected by the airline employees, although the employees did not know at that time who the agents would be. They all remained together at the terminal room. The agents witnessed the search and Agent Haight came prepared with a Marquis Reagent to make a field test. He was handed the suspected contraband by the airlines employee as soon as it was discovered in the search. Agent Haight immediately field-tested the suspicious substance and found it to be contraband. He returned it to the airline employee who put it back in the luggage. This was not a "hands-off" participation by the federal agents.

In the first place, the airline employees did not need to search the luggage to find out to whom it belonged. They already knew. There was only one reason why they initially notified the DEA and subsequently took the federal agents into their confidence; that was to determine whether the bag contained narcotics and, if so, to turn it over to the

agents for their investigative activities. That the agents came prepared to participate in the immediate investigation is without dispute. Haight candidly testified that there was no probable cause, no warrant, no consent, no exigent circumstances and no prior arrest. Under all of these circumstances we feel compelled to reach the conclusion that this was a government search requiring the application of the Fourth Amendment. It would have been so simple for the federal agents to have remained aloof from a private search by the airline employees and awaited their report.

In reaching this conclusion we attach no weight to the defendants' argument that a private citizen's motivation for conducting the search is of critical importance. In United States v. Billingsley, 7 Cir., 440 F.2d 823, 826, cert. denied, 403 U.S. 909, 91 S.Ct. 2219, 29 L.Ed.2d 687 (1971), in upholding a finding of a private search, we noted that the private individual involved had not "acted either at government direction or for the purpose of assisting the investigation." That statement should not be read to imply that a mere purpose to assist the government will be sufficient in and of itself to transform an otherwise private search into a government search. *Cf.* Corngold v. United States, 9 Cir., 367 F.2d 1, 5 (1966), with Gold v. United States, 9 Cir., 378 F.2d 588, 590–591 (1967).

We agree with the government's contention that defendants' reliance on Knoll Associates, Inc. v. FTC, 7 Cir., 397 F.2d 530 (1968), is misplaced. *Knoll* has been effectively distinguished in *Billingsley, supra*, and in United States v. Harper, 7 Cir., 458 F.2d 891, 893–894 (1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1772, 32 L.Ed.2d 132 (1972), relying upon NLRB v. South Bay Daily Breeze, 9 Cir., 415 F.2d 360, 363 (1969), cert. denied, 397 U.S. 915, 90 S.Ct. 919, 25 L.Ed.2d 96 (1970).

The government places material reliance on Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), and its progeny. In *Burdeau*, the Court

**1154**

established one of the early exceptions to the exclusionary rule laid down in Weeks v. United States, *supra*. It held that when no federal officer had anything to do with the wrongful seizure of an individual's property, or any knowledge thereof until several months thereafter, there was no invasion of the security afforded by the Fourth Amendment. 256 U.S. at 475, 41 S.Ct. 574. Further, the Court held that such materials, when turned over to the government by the private individuals who procured them, might be retained by the United States for use as evidence in the criminal prosecution of their owner. *Id.* at 476, 41 S.Ct. 574.

In our considered judgment, *Burdeau* and cases following it are distinguishable since in the case at bar under the facts hereinabove set out, there was joint participation by the private airline employees and the federal agents in the search and seizure sufficient to taint the use of the contraband seized.[5]

Finally, as an alternative ground that the search of Ms. Newton's luggage at the airport was governmental in nature, defendants rely upon the theory that this is so because of the extensive federal regulation of airports and airlines. In view of our disposition of this matter on other grounds we need not reach this question. The United States calls our attention to defendants' cited cases being related to the anti-hijacking program[6] and states that such problems are not related to the case at bar. We agree.

In light of the foregoing, we hold that the district court erred in concluding that there was a lack of governmental participation in the search and seizure at issue. The judgment of conviction of defendants Newton and Stokes is reversed.

Reversed.

---

5. See Byars v. United States, 273 U.S. 28, 32–34, 47 S.Ct. 248, 71 L.Ed. 520 (1927); Gambino v. United States, 275 U.S. 310, 314, 316–319, 48 S.Ct. 137, 72 L.Ed. 293 (1927). It is interesting to note that Mr. Justice Brandeis, joined by Mr. Justice Holmes, dissented in Burdeau v. McDowell, *supra,* yet they joined in a unanimous Court in *Byars* and in *Gambino*, with Mr. Justice Brandeis authoring the latter.

6. United States v. Davis, 9 Cir., 482 F.2d 893 (1973) and United States v. Lopez, E.D.N.Y., 328 F.Supp. 1077 (1971). However, in an analogous case, United States v. Ogden, 9 Cir., 485 F.2d 536 (1973), cert. denied, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974), the court declined to extend the protection of the Fourth Amendment to an airport search conducted outside the scope of the anti-hijacking program.