# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White Unitd States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

**Patrick Fisher**
**Clerk**

**Elisabeth A. Shumaker**
**Chief Deputy Clerk**

May 9, 1996

**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 95-2074 USA v. Leffall
April 23, 1996 by Judge Logan

Please be advised of the following correction to the captioned decision:

In the first line of the third paragraph on page five, the word "defendant" has been changed to "the airline employee".

Please make this correction to your copy.

Very truly yours,

Patrick Fisher, Clerk

Beth Morris
Deputy Clerk

**UNITED STATES COURT OF APPEALS**

**Filed 4/23/96**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,      )
            )
      Plaintiff-Appellee,     )
            )
      v.              )      No. 95-2074
            )
DANIELE M. LEFFALL,       )
            )
      Defendant-Appellant.  )

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR 94-463-JP)

---

Teresa E. Storch, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Rhonda Backinoff, Assistant U.S. Attorney (John J. Kelly, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before ANDERSON, LOGAN and REAVLEY,[*] Circuit Judges.

---

LOGAN, Circuit Judge.

---

The single issue in this appeal is whether a police officer acting as a witness while an airline employee opens a package is sufficient to make the employee an instrument of the government requiring suppression of the evidence uncovered by the search.  This is necessarily a fact-specific inquiry; but deciding the appeal also requires us to give more specific content to the applicable test stated in our prior cases.

Defendant Daniele M. Leffall entered a conditional guilty plea to possession of counterfeit securities, in violation of 18 U.S.C. § 513(a), reserving the right to take this appeal of the denial of his motion to suppress evidence.  The district court accurately and thoroughly summarized the facts in its order denying defendant's motion to suppress.  Because the facts are crucial to our determination and we cannot improve on the district court's statement we quote its order at length:

> On July 23, 1994, Mr. Steve Wilkins, an air freight employee of Continental Airlines in Albuquerque, received several inquiries from the defendant [who identified himself to Mr. Wilkins as Kenny Hartfield] about a package the defendant was expecting to receive that day from Houston through Continental's air freight services.  Mr. Wilkins testified that the defendant first inquired about the package in person at 2:45 p.m. on July 23.  Defendant contacted Mr. Wilkins about the package a total of four or five

[*] The Honorable Thomas M. Reavley, Senior United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

times throughout the afternoon and evening either in person or by telephone. Despite Mr. Wilkins' requests for information about the package, the defendant could not provide any information to Mr. Wilkins regarding the air freight bill number or when the package was shipped from Houston.

When Continental's last flight from Houston on July 23 arrived at 9:30 p.m., Mr. Wilkins was on duty alone. He observed what he believed to be the package about which the defendant had made the numerous inquiries. The package was addressed to someone named Kenny Hartfield or Hatfield. It had been mailed from Houston at 4:45 p.m. that day, approximately two hours after the defendant's first inquiry about the package in Albuquerque. The air freight charge had been paid in cash. The package was a box about 14" by 10" by 4" and was light in weight.

Although Mr. Wilkins did not find the box itself suspicious in nature, Mr. Wilkins decided he should open it when he saw the package was addressed to Kenny Hartfield or Hatfield. Mr. Wilkins testified that he had become suspicious of the contents because of the defendant's multiple inquiries, his unusually nervous appearance, and his inability to provide the air bill number in order for Mr. Wilkins to track the package. Mr. Wilkins stated that he personally and independently made the decision to open the package because he felt it contained some type of contraband or something illegal. He suspected that the contents were either some type of explosives that were not armed or drugs.

When asked whether he made the decision to open the defendant's package on behalf of his employer or on behalf of law enforcement agencies, Mr. Wilkins testified that he would open suspicious packages on behalf of his employer, Continental Airlines.

> They are the ones that give me the authority to do that, to protect my airline and my airplanes and my cargo, my people. In other words, I don't want any contraband involved in my -- in Continental Airlines whatsoever. I have been given the authority to make sure -- or if I have suspicions, to bring those suspicions to light, to make sure that people are not shipping unlawful substances, whatever it might be.

3

Transcript of Motion Hearing held November 29, 1994, at p. 23. Mr. Wilkins also stated that he believed Continental Airlines had a policy directing an employee to open any package suspected of containing something dangerous to the safety of the airline's personnel or its passengers and that such a policy would include the responsibility to open a package that an employee thinks might contains drugs. Id. at 22. Mr. Wilkins did not present any written policy to this effect.

Before opening the package, Mr. Wilkins telephoned the airport police office which is located at the main terminal, a short drive from Continental's air freight services, and advised whomever answered the phone that he wanted someone to witness the opening of the package. Mr. Wilkins testified that he wanted a witness so that no one could accuse Mr. Wilkins of altering the contents of the box. Although Mr. Wilkins could have asked anyone to observe the opening of the package, he selected a law enforcement officer because no coworkers were present at the freight service office, and in any event he had to drive to the main terminal where the police office was located to find a witness. Mr. Wilkins then drove to the airport police office at the main terminal with the package and encountered Sergeant Phil Perez.

Mr. Wilkins testified that he told Sgt. Perez of his suspicions about the package and also informed Sgt. Perez that according to the air freight contract he, Mr. Wilkins, had the right to open the package. As a condition of using Continental Air Freight, an individual sender must sign an air freight contract which states that all shipments are subject to inspection by the carrier. . . . I made a factual finding that after Mr. Wilkins entered Sgt. Perez's office, Mr. Wilkins told Sgt. Perez that he, Mr. Wilkins, had the contract authority to open the package and showed the air freight contract to Sgt. Perez who looked at it, read it and agreed that it said that Mr. Wilkins did have the contract authority to open the package.

Sgt. Perez testified that the tape that sealed the box had already been opened when Mr. Wilkins first showed him the box and that Mr. Wilkins admitted that he had already opened the box but not the contents. Inside the box was an orange overwrap tied with a string that enclosed an unknown item.

After Mr. Wilkins placed this box on a counter, Sgt. Perez put his hands on the box, turned it around on the counter and satisfied himself that

4

it did not contain a bomb or explosive device. Sgt. Perez testified that he then watched while Mr. Wilkins lifted the lid of the box, unsealed the overwrap and opened the sealed manilla envelope which was inside. Sgt. Perez testified that he did not open the box or touch the contents. Mr. Wilkins extracted what appeared to be a sheaf of papers from the manilla envelope and spread the papers out on the counter between Sgt. Perez and himself. While scrutinizing the papers on the counter, Sgt. Perez and Mr. Wilkins simultaneously realized that the papers were approximately forty identical sheets of Target payroll checks. Each sheet contained two payroll checks, one made out to Kenny Haetfield in the amount of $496.92 and the other made out to Wilma J. Childs in the amount of $487.38.

Sgt. Perez dispatched officer Debra Roach to accompany Mr. Wilkins with the package back to the Continental air freight office. When they arrived, the defendant was present. After the defendant took possession of the package and signed for it, Officer Roach took him into custody.

I R. doc. 31 at 1-5 (citations and footnotes omitted).

We review the district court's findings of fact determining the airline employee was not a government agent or instrument under a clearly erroneous standard. Pleasant v. Lovell, 974 F.2d 1222, 1226 (10th Cir. 1992) (Pleasant II). We consider the evidence in the light most favorable to the government, United States v. Short, 947 F.2d 1445, 1449 (10th Cir. 1991), cert. denied, 503 U.S. 989 (1992), but review de novo the ultimate question of constitutional law. United States v. Thody, 978 F.2d 625, 628-29 (10th Cir. 1992), cert. denied, 115 S. Ct. 273 (1994). Although the Fourth Amendment protects against unreasonable searches and seizures: it "proscrib[es] only government action; it is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or

5

knowledge of any governmental official.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984) (quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

We have stated the applicable test to determine when a search by a private person becomes government action as a two-part inquiry, "1) whether the government knew of and acquiesced in the intrusive conduct, and 2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." Pleasant v. Lovell, 876 F.2d 787, 797(10th Cir. 1989) (Pleasant I) (citations omitted). Both prongs of the test must be met before it is governmental conduct. Id.; Pleasant II, 974 F.2d at 1226. Only the second prong is at issue in the instant appeal, as the government concedes it knew of and acquiesced in the search.

After examining both the level of government participation and the searching party's motivation the district court ruled that Sergeant Perez was neither "a direct participant or an indirect encourager of the search," I R. doc. 31 at 10, that airline employee Wilkins acted "primarily to further his own ends and not those of the government," id. at 11, and that he "had a legitimate independent motivation in conducting the search which was not overridden by the presence of the police during the search." Id. at 13. Defendant contends the district court's findings are flawed because Wilkins involved Perez early in the search process and conducted the search in Perez'

presence, and that these facts coupled with Wilkins' crime prevention motive converted the search into government action implicating the Fourth Amendment.

We believe our earlier statement of the test's second prong, "whether the party performing the search intended to assist law enforcement officers or to further his own ends," Pleasant I, 876 F.2d at 797, does not mean that the court simply evaluates the private person's state of mind--whether his motive to aid law enforcement preponderates. Almost always a private individual making a search will be pursuing his own ends--even if only to satisfy curiosity--although he may have a strong intent to aid law enforcement. We hold this part of the test also requires that the court weigh the government's role in the search. A government agent must be involved either directly as a participant--not merely as a witness--or indirectly as an encourager of the private person's search before we will deem the person to be an instrument of the government. See United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981). Although law enforcement officers may not circumvent the Fourth Amendment by acting through private citizens, officers need not restrain or discourage private citizens from doing that which is not unlawful.

In the Pleasant cases, in which we held a private person to be a government agent, the government encouraged and actually participated in searches over a three-month period. See Pleasant II, 974 F.2d at 1225-26. But in no case in this circuit have we found a private person to be a government agent or instrumentality when government participation was as minimal as in the instant case. In United States v. Andrews, 618 F.2d

7

646 (10th Cir. 1980), we stated that "the law in this Circuit is that airline freight inspections by suspicious officials who are properly proceeding under tariff regulations and who are not acting 'in collusion with federal officials' are private searches." Id. at 650. There the airline employee's action was "prompted solely by his desire to assist law enforcement," id. (quoting district court finding), but we held that the search was private when the airline employee opened the package before notifying police, who then field tested the white powder and found it to contain cocaine.

Most of the decisions elsewhere involving analogous facts concluded that the governmental involvement was insufficient to make the private individual an instrumentality of the government. In United States v. Jennings, 653 F.2d 107 (4th Cir. 1981), the court upheld as private action a search by airline personnel observed by a Drug Enforcement Administration (DEA) agent invited to attend, despite the fact that the DEA had previously informed airline security of an anonymous tip about illegal drug shipments to this defendant. The court concluded the airline relied on more than the original DEA tip and decided to open the package before calling the DEA. Although the circumstances were consistent with that tip, airline security suspected wrongdoing because the shoe box-sized package sent to the defendant, declared to be shoes, cost the sender a shipping bill of $29.

In Gomez v. United States, 614 F.2d 643 (9th Cir. 1979), a police officer assigned to an airport retrieved a bag that had apparently fallen off the conveyer belt and lacked

8

identification. When an airline supervisor had difficulty opening it to locate identification, the police officer "tapped or kicked" the lock to release it. The court held that the officer's "slight participation" did not transform the airline's search into a governmental one, even though the officer observed the employee actually lift a lid revealing firearms and cocaine. See also United States v. Andrini, 685 F.2d 1094 (9th Cir. 1982) (although police had recently begun surveiling defendant at the hotel and suspected the misplaced bag was his, they did not communicate that suspicion to the hotel clerk, instead they advised him to follow hotel practices to determine ownership; held to be private search though officer stood approximately ten feet back from the bag as it was opened); United States v. Cleaveland, 38 F.3d 1092 (9th Cir. 1995) (police presence to ensure utility company employee's safety while he searched for evidence of electric service theft did not override the independent motive for the search).

United States v. Walther, 652 F.2d 788 (9th Cir. 1981), which upheld suppression of cocaine discovered when an airline employee opened a suspicious "Speed Pak," is clearly distinguishable. The DEA had paid that employee on at least eleven prior occasions for providing the DEA with information, and had issued him a confidential informant number. The district court found the employee was not pursuing the airline's interests and expected payment for calling the DEA if he discovered a significant quantity of contraband.[1]

_____

[1] United States v. Reed, 15 F.3d 928 (9th Cir. 1994), is not an airline employee search

(continued...)

9

The case that comes closest to supporting suppression here is United States v. Newton, 510 F.2d 1149 (7th Cir. 1975). There airline employees suspected that a piece of misplaced luggage contained contraband because of unusual actions and inquiries by the alleged owner and her companion. The airline employee called the DEA in Washington, D.C., relating the suspicious events. The airline employee's supervisor decided to locate the bag and open it to ascertain its contents. He opened it in the presence of two DEA agents and found heroin. In ruling that the evidence must be suppressed the court stated

> The circumstantial chain of connection between the airline employees and the federal agents is convincing. The federal authorities were first notified in Washington, D.C., and they dispatched two agents from Chicago to the airport. They were expected by the airline employees, although the employees did not know at that time who the agents would be. They all remained together at the terminal room. The agents witnessed the search and Agent Haight came prepared with a Marquis Reagent to make a field test. He was handed the suspected contraband by the airlines employee as soon as it was discovered in the search. Agent Haight immediately field-tested the suspicious substance and found it to be contraband. He returned it to the airline employee who put it back in the luggage. This was not a "hands-off" participation by the federal agents.

---

[1](...continued)
case, but is also distinguishable on other bases. There a hotel assistant manager testified he called police to tell them he thought one of the hotel guests was "involved in [drug] activity they would want to know about," id. at 931; he thought he could conduct a search without being regarded as an agent of the police. He opened dresser drawers and defendant's latched briefcase in the presence of officers--but without police prompting--"just snooping" to obtain information for the police. The Ninth Circuit held that mere presence of government agents and their observation of a private person's actions do not turn a private search into a joint effort, but that here the officers' presence was more than incidental. They were called in for protection and served as lookouts; they knew the hotel employee was illegally invading defendant's private property and assisted that endeavor.

Id. at 1153.  The court noted, however, that "a mere purpose to assist the government will [not] be sufficient in and of itself to transform an otherwise private search into a government search."  Id.

Unlike in Newton, prior interaction with law enforcement did not cloud airline employee Wilkins' actions in the instant case.  Wilkins did not hope for a reward, or receive instruction as to what packages or individuals fit a suspicious profile.  Only once before had Wilkins opened a suspicious package, and he had never met Sergeant Perez before this incident.  Although Continental Airlines evidently has no standard or guidelines directing employees how to evaluate when to open a package, Wilkins nevertheless acted to pursue his employer's interests to deter traffic in illegal substances and contraband.  Wilkins followed his employer's standard procedures when he decided to open the suspicious package.  He understood Continental policy to require him to have a witness when opening a suspicious package.  Because no coworkers were at the Continental freight office he could only obtain a witness by traveling to the main terminal where the police were also located.  Although he no doubt thought that a police officer would be the best witness, the evidence suggests that Wilkins selected his witness of necessity.

Apparently Wilkins was concerned that the package might contain a bomb.  He mentioned contraband, which he defined as including bombs or explosives.  Sergeant Perez' only participation, besides observing, was to move the already unsealed outer

shipping box to ascertain that it did not contain a bomb. Perez did nothing to encourage Wilkins to open either the overwrap or the manila envelope containing the securities. Wilkins' curiosity seems to have ultimately compelled him to open the inner manila envelope. Defendant concedes that if Wilkins' primary reason for opening the package was to satisfy his curiosity, that he acted for his own purposes and not those of law enforcement.

Unquestionably an airline's interest in avoiding facilitation of illegal drug trafficking sometimes will aid law enforcement efforts; this reality creates some internal tension in the analysis under the second prong of our test. But under the facts of this case, it is not difficult to uphold the district court's ruling that Wilkins acted with independent aim and not as a surrogate for the government.

AFFIRMED.