PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 5/17/96**

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

    No. 95-8036

ROGER SMYTHE,

      Defendant - Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 94-CR-139)

---

Laurence P. Van Court, Office of the Federal Public Defender, Cheyenne, Wyoming, for Appellant.

David A. Kubichek, Assistant United States Attorney, Casper, Wyoming (David D. Freudenthal, United States Attorney and Patrick J. Crank, Assistant United States Attorney, Casper, Wyoming, with him on the brief), for Appellee.

---

Before EBEL, KELLY and LUCERO, Circuit Judges.

---

KELLY, Circuit Judge.

---

    Mr. Smythe entered a conditional plea to conspiracy to possess with intent to distribute, to distribute, and to manufacture methamphetamine, 21 U.S.C. § 846, and carrying and using a firearm during a drug trafficking offense, 18 U.S.C. § 924(c). He

now appeals the denial of his motion to suppress. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

Background

In October 1994, Mr. McCartney, manager of the Powder River Bus Station in Sheridan, Wyoming, received a package from two men, one of whom was Mr. Smythe, requesting that the package be shipped via bus to California. Prior to approaching Mr. McCartney, one of the men repeatedly exited and reentered the building. 9 R. 45-46. Mr. McCartney also noticed that the name of the sender was printed on the package as "Jack A. Lope." Id. at 42. Aware that a "jackalope" is a fictitious creature resembling a rabbit with antlers, Mr. McCartney laughed out loud and attempted to joke about it with the senders. The senders did not appreciate Mr. McCartney's attempted humor but remained serious, retorting "is there a problem with that?" Id. at 43-44. Also, the package was heavily taped, with all of the seams of the box completely sealed. Id. at 47.

After the men left the station, Mr. McCartney became concerned about the contents of the box, due to the potential threat to passengers on the bus on which the package was to be shipped. Id. at 51. Mr. McCartney looked through his employee's manual and spoke with fellow employees in a futile attempt to discover information regarding his right to search the package. Id. at 53-56. He then telephoned the Sheridan Police Department ("SPD") to inquire whether "they may have some law that they would let me know about whether it is legal for me to open a package or not," id. at 57; he spoke

with Sergeant Walker of the SPD, who arrived at the bus station shortly after the call. Once at the bus station, Sergeant Walker informed Mr. McCartney that he, Sergeant Walker, believed that Mr. McCartney could open the package but that he, Sergeant Walker, could not. Id. at 58, 102. Sergeant Walker never touched the package, did not assist, ask or otherwise encourage Mr. McCartney to open the package and stepped away as Mr. McCartney opened the package. Mr. McCartney testified that the decision to open the package was entirely his, id. at 59, that he was not acting at the request or as an agent of the police in opening the package, id. at 60-62, and that he would have opened the package regardless of whether the police responded to his call, id. at 96.

Mr. McCartney opened the box in the presence of Sergeant Walker and discovered a number of plastic containers containing thousands of pills. Sergeant Walker then contacted Mr. Hughes, an agent with the Wyoming Division of Criminal Investigation with many years of experience investigating narcotics violations. Based upon his observation, Mr. Hughes concluded that the package contained ephedrine tablets. A field drug test conducted at that time confirmed Mr. Hughes' suspicion. Id. at 130-31.

## Discussion

### A. Standard of Review

In reviewing the district court's denial of a motion to suppress, we apply the clearly erroneous standard of review to the district court's findings of fact and view the evidence in the light most favorable to the government. United States v. Lewis, 71 F.3d.

358, 360 (10th Cir. 1995). The reasonableness of a search and seizure is a question of law we review de novo. United States v. Martinez-Cigaorroa, 44 F.3d. 908, 910 (10th Cir.), cert. denied, 115 S. Ct. 1386 (1995).

## B. Private Searches

The Fourth Amendment protects citizens from unreasonable searches and seizures by government actors. Burdeau v. McDowell, 256 U.S. 465, 475 (1921). However, Fourth Amendment protection against unreasonable searches and seizures "is wholly inapplicable 'to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984) (quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)); see also United States v. Leffall, 1996 WL 194437, at *3 (10th Cir. April 23, 1996). However, in some cases a search by a private citizen may be transformed into a governmental search implicating the Fourth Amendment "if the government coerces, dominates or directs the actions of a private person" conducting the search or seizure. Pleasant v. Lovell, 876 F.2d 787, 796 (10th Cir. 1989). In such a case, the private citizen may be regarded as an agent or instrumentality of the police and the fruits of the search may be suppressed.

In Pleasant, we observed that two important inquiries to aid in the determination of whether a private person becomes an agent or instrumentality of the police are whether

"the government knew of and acquiesced in the intrusive conduct, and . . . [whether] the party performing the search intended to assist law enforcement efforts or to further his own ends." Id. at 797 (quoting United States v. Miller, 668 F.2d 652, 657 (9th Cir. 1982)). We are satisfied that knowledge and acquiescence, as those terms are used in Pleasant and the cases cited therein, encompass the requirement that the government agent must also affirmatively encourage, initiate or instigate the private action. See id. at 797-98. The totality of the circumstances guides the court's determination as to whether "the government coerces, dominates or directs the actions of a private person." Id. at 796 (citing Coolidge v. New Hampshire, 403 U.S. 443, 489 (1971) (plurality opinion)).

It is clear that if a government agent is involved "merely as a witness," the requisite government action implicating Fourth Amendment concerns is absent. Leffall, 1996 WL 194437, at *4; accord United States v. Coleman, 628 F.2d 961, 965 (6th Cir. 1980) (requiring more than the mere presence of a police officer to implicate the Fourth Amendment). In some affirmative way, the police must instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment. See United States v. Lambert, 771 F.2d 83, 89 (6th Cir.), cert denied, 474 U.S. 1034 (1985). As stated by the Ninth Circuit:

> While a certain degree of governmental participation is necessary before a private citizen is transformed into an agent of the state, *de minimis* or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny.

United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981).  Fourth Amendment concerns simply are not implicated "when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor."  Pleasant, 876 F.2d at 797.  While government agents may not circumvent the Fourth Amendment by acting through private citizens, they need not discourage private citizens from doing that which is not unlawful.  Leffall, 1996 WL 194437, at *4.

Here, the search in question is not a governmental search implicating the Fourth Amendment because Mr. McCartney had a "legitimate, independent motivation" to search the package, Walther, 652 F.2d at 792; see also United States v. Reed, 15 F.3d. 928, 932 (9th Cir. 1993), namely, his independently formed belief that something was dangerous about the package, 9 R. 95-96, and his concern for the passengers on the bus on which the package was to be shipped, id. at 59-60.  The police in no way instigated, orchestrated or encouraged the search.  The district court so found.  Mr. McCartney testified that the police neither told nor encouraged him to search the package, id. at 95-96, and the district court further concluded that Mr. McCartney "would have opened the package even if the police had not responded to his call," 3 R. doc. 145 at 7.  Fourth Amendment protection does not apply to the *de minimis* police involvement in the search of Mr. Smythe's package; the search remained a private one.  Leffall, No. 95-2074, slip op. at 7.

We finally note that the drug field test conducted by Agent Hughes of the contents of Mr. Smythe's package did not offend the Fourth Amendment because field tests are

not searches within the meaning of the Fourth Amendment.  <u>Jacobsen</u>, 466 U.S. at 122-23.  Such tests determine only whether or not a substance is a controlled substance, a fact

that is not the source of a legitimate expectation of privacy.  <u>Id.</u>


AFFIRMED.