OPINION OF THE COURT
G. Thomas Moynihan, Jr., J.
The defendant is charged in a one-count indictment with grand larceny in the third degree in violation of former subdivision 1 of section 155.30 of the Penal Law, a class E felony. A "probable cause” hearing was scheduled to be held on July 7, 1987, before this court. However, the defendant waived her right to said hearing and entered into a stipulation with the District Attorney by which it was agreed that the court would determine whether certain evidence should be suppressed based solely upon its consideration of the minutes of the preliminary hearing, the minutes of the Grand Jury proceeding and other additional facts which were stipulated to orally on the scheduled hearing date.
Upon a review of all of the foregoing, this court finds as *185 follows: the defendant was at the time of the incident set forth in the indictment employed by the Sagamore Hotel (hereinafter Sagamore) to perform essentially chambermaid-type duties. The Sagamore is a large resort hotel located on an island in Lake George known as Green Island which is in the Town of Bolton, and County of Warren. The only connection with the mainland is a causeway between the Village of Bolton Landing and the Sagamore property on Green Island.
At the time of the incident in question, security personnel employed by the Sagamore were involved in an investigation of a series of thefts from guest rooms at the hotel. In an attempt to apprehend the individual or individuals involved, two members of the Sagamore security force placed the sum of $260 in a room to which this defendant was assigned for purposes of housekeeping. It is alleged that the defendant was seen entering the room in question. Subsequently, a check of the room revealed the money to be missing, and members of the Sagamore security force searched the defendant’s automobile in her absence and without her knowledge or consent. As a result of the search, the $260 previously placed in the room was discovered in a paper bag. When confronted with this fact the defendant denied taking the money and further denied ever entering the room in question. She was detained by the Sagamore security officers until such time as she was placed in the custody of the Warren County Sheriffs Department. Of particular importance to this decision, this court also finds that the Sagamore security force had, previous to this incident, advised personnel of the Warren County Sheriffs Department that routine patrols by them on Green Island were unnecessary and further that their presence on the island would be required only upon a special request. It is clear to this court that the matter of hotel and island security was solely within the control of the hotel’s private security force.
The defendant’s attorney has moved, inter alia, to suppress the money which was allegedly discovered in the automobile on the grounds that the discovery was as a direct result of an unreasonable search and seizure (US Const 4th Amend; NY Const, art I, § 12), notwithstanding that it was made by a "private” security force. The People contend that the prohibitions regarding unlawful search and seizure "do not require exclusion of evidence because a private individual has gathered it by unlawful means” (People v Horman, 22 NY2d 378, 381; see also, People v Gleeson, 36 NY2d 462, 465).
Despite considerable research the court has been unable to *186 find any precedent which deals specifically with the facts and circumstances present herein. However, given the proliferation in this country of privately employed security personnel as a supplement to or, as in this case, a replacement for local law enforcement authorities, the privacy rights of a citizen of this State may be increasingly jeopardized.
As is suggested in a leading treatise on the subject of the exclusionary rule (1 LaFave, Search and Seizure § 1.8 [d], at 200 [2d ed]), Marsh v Alabama (326 US 501) supplies "a basis for holding that private investigators and police are subject to the Fourth Amendment because they are with some regularity engaged in the 'public function’ of law enforcement”. Marsh involved a company-owned town which had "all the characteristics of any other American town” (supra, at 502). It appears to this court that there are considerable similarities between Marsh and the Sagamore insofar as the latter is also a self-contained and otherwise autonomous entity, the "operation [of which] is essentially a public function” (supra, at 506).
Professor LaFave further noted (op. cit, at 200) that it is necessary not only to make a threshold determination as to whether private police are engaged in a " 'public function’ ” but also that "exclusion can be an effective deterrent only if two conditions are met: (i) 'the searcher must have a strong interest in obtaining convictions’; and (ii) 'the searcher must commit searches and seizures regularly in order to be familiar enough with the rules to adapt his methods to conform to them’ ” (quoting 19 Stanford L Rev 608, 614-615). This court finds that the Sagamore’s private security force not only performs a "public function” but that said force falls within the parameters of the two criteria above listed.
In a relatively recent case decided by the Supreme Court of California (People v Zelinski, 24 Cal 3d 357, 368, 594 P2d 1000, 1006-1007), which this court finds particularly compelling, it was stated that "in any case where private security personnel assert the power of the state to make an arrest or to detain another person for transfer to custody of the state, the state involvement is sufficient for the court to enforce the proper exercise of that power * * * by excluding the fruits of illegal abuse thereof’. The Zelinski case involved department store detectives who performed a search of a suspected shoplifter. The court found that if "the security guards sought only the vindication of the merchant’s private interests they would have simply exercised self-help and demanded the return of the stolen merchandise [and that u]pon satisfaction of the *187 merchant’s interests, the offender would have been released” (supra, 24 Cal 3d, at 367, 594 P2d, at 1006). By analogy to the facts herein, the Sagamore’s interests could have been vindicated by the confiscation of the $260 from the defendant and the termination of her services. By going further and detaining her for eventual criminal process the Sagamore’s security personnel were promoting society’s interest and, as such, the safeguards provided by the Fourth Amendment were activated.
In People v Adler (50 NY2d 730, 737), it was held that "private conduct may be so imbued with governmental involvement that it loses its character as such and calls into play the full panoply of Fourth Amendment protections”. Furthermore, it has been held that merely "because a search was not conducted with police involvement, however, does not mean that the exclusionary rule arising from the Fourth Amendment does not apply” (People v Haskins, 48 AD2d 480, 482). While this court readily concedes that these two cases involve somewhat different circumstances, it suggests that there are exceptions to the general rule that evidence obtained by a private individual pursuant to unlawful means need not be excluded.
In conclusion, given the unique nature of the facts and circumstances present at the Sagamore, i.e., the operation of what amounts to a "public function”, and the performance of their private security force in a manner which amounts to a "public function” (especially insofar as local law enforcement agencies are excluded except upon request), it is the carefully considered judgment of this court that the seizure of the money was from the defendant’s automobile, was unlawful and, as such, is thus suppressed as unconstitutionally seized (US Const 4th Amend; NY Const, art I, § 12).