**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tariq B. SHAHID, a/k/a Kennis Butler,
a/k/a Kenneth A. Butler, Defendant–
Appellant.**

No. 96–3231.

United States Court of Appeals,
Seventh Circuit.

Argued March 4, 1997.

Decided May 22, 1997.

Kathleen M. Sweeney, Winfield D. Ong (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Steven J. Riggs (argued), Indiana Federal Community Defenders, Inc., Indianapolis, IN, for Defendant–Appellant.

Before CUMMINGS, COFFEY, and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Tariq Shahid was indicted on charges of being a felon in possession of a firearm and being a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress the firearm and the ammunition, alleging that they were discovered incident to a stop by shopping mall security officers that violated the Fourth Amendment. After an evidentiary hearing, the district court denied the motion to suppress, concluding that the Fourth Amendment did not apply because the mall security officers were not acting as agents of the government. Soon thereafter, Shahid pleaded guilty to the first count of the indictment (possession of a firearm), while reserving the right to appeal the denial of the motion to suppress. He was sentenced to 92 months in prison. Shahid appeals, arguing that the Fourth Amendment did apply to the mall security officers. We affirm.

## I. BACKGROUND

*The Stop and Search of Shahid by Mall Security Officers*

On June 29, 1995, Shahid entered Kay Jewelers, a retail store inside the Castleton Square Mall in Marion County, Indiana. Upon Shahid's request, Mark Davis, the manager of the store, handed him a diamond ring to examine. After a brief time, Shahid returned what Davis believed to be a fake ring. Accordingly, Davis said a code word as a signal for another employee to contact Castleton Square Mall security officers. After a security officer came into the store, Davis offered the apparently fake ring back to Shahid. Shahid took that ring with one hand, and with his other hand returned what Davis believed was the genuine ring. He then left Kay Jewelers (without any of the store's property) and went into another store. He was not stopped by security officers at this time.

Davis contacted the district manager of Kay Jewelers, Jeffrey Starkey, and reported this incident. While talking with Davis, Starkey recalled that in the past month or so, the Kay Jewelers store in the Lafayette Square Mall had discovered an apparent switch of a cubic zirconia ring for a diamond ring, and that the perpetrator had not been caught. Starkey called Frank Borrell, manager of security at the mall, and requested that Shahid be detained. As to his conversation with Starkey, Borrell testified only that Starkey

"wanted him [i.e., Shahid] detained"; Starkey testified that all he remembered was that he told Borrell about "what had happened to us at Lafayette Square and is there anything he could do to help us out as far as holding him until the police department got there." Borrell radioed security officers with instructions that they assist store manager Davis "in providing a safe and secure environment," and that they "get ahold of the Marion County Sheriff's Department."

One security officer stopped Shahid in the mall parking lot, and another arrived shortly thereafter to assist; Davis was also present to identify Shahid. One of the security officers patted down Shahid, and recovered ammunition for a firearm. The security officer then asked Shahid where the firearm was, and Shahid gave him a firearm. The security officers transported Shahid to the mall security office. Shahid was detained there until a Marion County deputy sheriff arrived and placed him under arrest for attempted theft.

*The Duties of Security Officers at Castleton Square Mall*

Castleton Square Mall is a large indoor shopping center bordered by an outdoor parking lot. The mall and parking lot are owned by a Mr. DeBartolo and managed by DeBartolo Properties Management, Inc., a private corporation, which in turn employs approximately twenty security officers for the mall. Security manuals establish guidelines for the security officers, addressing issues such as when and how to detain an individual. The manuals stress that security officers are not employees of the retail stores, but rather of DeBartolo Properties, and that their role is to provide safety and protection for both patrons and merchants. One of the manuals states that once an alleged shoplifter is stopped, a security officer should contact a local police agency and remain with the alleged shoplifter until a law enforcement officer arrives.

Two security officers testified as to their roles at the mall. James Garrison, a security supervisor as well as one of the two security officers who participated in the stop and search of Shahid, affirmed that his responsibilities "include keeping the peace or re-

sponding to merchants that have complaints about security." Frank Borrell testified that his duties as security manager are to try "to provide a safe and secure environment for all of our customers and tenants," to serve as "a liaison" with the Marion County Sheriff's Department, and to supervise the security officers. He also affirmed that security officers are responsible for maintaining "the security or the good order of the shopping center and its parking lot area."

According to the testimony of the security officers and a deputy sheriff, officers of the Marion County Sheriff's Department generally do not patrol the mall, though they do check for parking and fire lane violations in the outdoor parking lot, apparently pursuant to an agreement between the mall and the Sheriff's Department. The testimony also established that mall security officers patrol not only the mall, but the parking area and some surrounding access roads as well. A letter from the general counsel of DeBartolo Properties, admitted into evidence at the hearing, asserts that "there are no contracts and/or agreements, either formal or informal[,] with any police department, including [the] Marion County Sheriff or Indianapolis Police Department[,] concerning arrests." Security manager Borrell testified that security officers do not have "police powers," and that he knew of no security officers at the mall in June 1995 who were also serving as "police officers," "peace officers," or "deputy sheriff[s]." Garrison testified that he did not have "any other law enforcement employment" during his time of employment as a mall security officer.

*Decision of the District Court*

Following an evidentiary hearing, the district court denied Shahid's motion to suppress, concluding that the mall security officers were not acting as agents of the government. The district court deemed it clear, based on the testimony of the security officers, that they detained Shahid to further their "own ends": specifically, "to provide a secure environment for the ... stores to sell their goods." The district court also found that the Sheriff's Department "knows that there is a private agency that detains individuals on the lot and

throughout the mall ..., and probably knows that for all the malls we have in the area." However, in the district court's view, the Sheriff's Department's general knowledge of the activities at the mall did not transform the mall security officers into agents of the Sheriff's Department in all cases. The district court thought that the outcome might be different if the Sheriff's Department had told the security officers to look out for a suspect, but that Shahid's case did not involve such facts. The district court stated in conclusion, "[T]o suggest that the only people that are interested in law enforcement and security at the mall are public agencies is probably overbroad."

## II. DISCUSSION

■■■ A search or seizure by a private party does not implicate the Fourth Amendment. *United States v. Koenig*, 856 F.2d 843, 847 (7th Cir.1988) (citing *Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410; *Coolidge v. New Hampshire*, 403 U.S. 443, 487–90, 91 S.Ct. 2022, 2048–50, 29 L.Ed.2d 564; and *United States v. Jacobsen*, 466 U.S. 109, 118–22, 104 S.Ct. 1652, 1658–61, 80 L.Ed.2d 85). However, the Fourth Amendment does apply to a search or seizure by a party (even if otherwise a private party) who is acting as an "instrument or agent" of the government. *Id.* (quoting *Coolidge*, 403 U.S. at 487, 91 S.Ct. at 2048); *United States v. Feffer*, 831 F.2d 734, 737 (7th Cir.1987). This Court has explained that " 'two critical factors in the "instrument or agent" analysis are whether the government knew of and acquiesced in the intrusive conduct and whether the private party's purpose in conducting the search was to assist law enforcement agents or to further [its] own ends.' " *Id.* (quoting *Feffer*, 831 F.2d at 739). Other useful criteria are whether the private actor acted at the request of the government and whether the government offered the private actor a reward. *United States v. McAllister*, 18 F.3d 1412, 1417–18 (7th Cir.1994); *Koenig*, 856 F.2d at 847. The analysis is made "on a case-by-case basis and in light of all of the circumstances." *Koenig*, 856 F.2d at 847; *Feffer*, 831 F.2d at 739. The defendant bears

the burden of proving that the private party was acting as an instrument or agent of the government. *McAllister*, 18 F.3d at 1417; *Koenig*, 856 F.2d at 847.

Both parties assert that *Ornelas v. United States*, —— U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911, requires a *de novo* review of the district court's decision to deny the motion to suppress the ammunition and firearm. The Court in *Ornelas* considered the nature of district court determinations of reasonable suspicion and probable cause, and decided to require *de novo* review of such determinations, along with clear error review of the district court's findings of historical fact and accordance of due weight to inferences drawn from those facts by resident judges and local law enforcement officers. *Id.* at ——, 116 S.Ct. at 1663. In cases decided prior to *Ornelas*, this Court established a clear error standard of review for determinations that a private party was acting as an instrument or agent of the government for Fourth Amendment purposes. *McAllister*, 18 F.3d at 1417; *Koenig*, 856 F.2d at 847, 848. It is unnecessary to decide whether *Ornelas* applies in Shahid's case, because the district court's determination survives scrutiny under either *de novo* or clear error review.

In presenting his claim, Shahid focuses solely on the two "critical factors" identified in our case law: "whether the government knew of and acquiesced in the intrusive conduct" and "whether the private party's purpose in conducting the search was to assist law enforcement agents or to further [its] own ends." This Court engaged in its most extensive discussion of these factors in *Koenig*. *Koenig* explained that a private search can be converted into a governmental search only where there is "some exercise of governmental power over the private entity, such that the private entity may be said to have acted on behalf of the government rather than for its own, private purposes." *Koenig*, 856 F.2d at 849–50 (citing *Coolidge*, 403 U.S. at 488–89, 91 S.Ct. at 2049). "Mere knowledge of another's independent action [ ] does not produce vicarious responsibility absent some manifestation of consent and the ability to control." *Id.* at 850 (citation omitted). A private party cannot be deemed a govern-

ment agent unless it was induced to act by some government action. *Id.* "Private parties may, of their own accord, pursue the same objectives they have set for their elected officials without acquiring the legal status of governmental agent." *Id.* A private citizen might decide to aid in the control and prevention of criminal activity out of his or her own moral conviction, concern for his or her employer's public image or profitability, or even desire to incarcerate criminals, but even if such private purpose should happen to coincide with the purposes of the government, "this happy coincidence does not make a private actor an arm of the government." *Id.* at 850–51.

██ Both the security officers' testimony at the hearing and the excerpts from the security manuals admitted into evidence indicate that the security officers' primary role is to provide safety and security for all persons on mall property. Part of that role, according to the evidence, is to assist retailers in stopping shoplifters (and, apparently, attempted shoplifters) and holding them until the arrival of law enforcement officers. Shahid emphasizes the last aspect of the role: holding suspects until law enforcement can take them into custody. However, that a private party "might also have intended to assist law enforcement does not transform him into a government agent so long as 'the private party has had a legitimate independent motivation for engaging in the challenged conduct.'" *McAllister*, 18 F.3d at 1418 (emphasis in original) (quoting *United States v. Attson*, 900 F.2d 1427, 1432 (9th Cir.1990), certiorari denied, 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403); *see also Koenig*, 856 F.2d at 850–51 ("intent to assist in the government's enforcement of the criminal laws" is not in itself sufficient to show that the private party was a government agent); *United States v. Marzano*, 537 F.2d 257, 271 (7th Cir.1976) ("a mere purpose to assist the

Government does not transform an otherwise private search into a Government search") (citing *United States v. Newton*, 510 F.2d 1149, 1153 (7th Cir.1975)), certiorari denied, 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749.[1] Shahid does not point to any evidence that the security officers strayed from their role in this case. We have no reason to doubt that they acted to ensure the safety and security of the mall in order to further private purposes, such as satisfying their employer and the mall's retailers.

██ In any event, even if the sole or paramount intent of the security officers had been "to assist law enforcement"—which the evidence does not suggest in this case—such an intent would not transform a private action into a public action without the government's knowledge of the action (or of the policy or practice of performing such actions), combined with "some exercise of governmental power over the private entity," *i.e.*, "some manifestation of consent and the ability to control." *Koenig*, 856 F.2d at 849, 850. Nothing in the evidence at the suppression hearing suggests that the Marion County Sheriff's Department is able to control or induces decisions of mall security officers to stop and search persons on mall property. Presumably, as the district court suggested, security officers would try to stop and detain someone if so requested by the Sheriff's Department. But as the district court also indicated, that was not the situation in Shahid's case.

Shahid attempts to analogize his situation to *Soldal v. County of Cook*, 942 F.2d 1073 (7th Cir.1991) (en banc), reversed on other grounds, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450. In *Soldal*, this Court concluded that deputy sheriffs had acted "as if they had deputized the private defendants" to assist them in law enforcement, and that therefore the private defendants, as well as the

---

1. Shahid contends that whether the private actor harbored an independent motivation is irrelevant, in light of the recent declarations in *Whren v. United States*, —— U.S. ——, 116 S.Ct. 1769, 135 L.Ed.2d 89, that "actual motivations" or "subjective intentions" play no role in Fourth Amendment analysis, *id.* at ——, 116 S.Ct. at 1774. *Whren*, though, was concerned with a different area of Fourth Amendment law—whether searches or seizures made with probable cause are undermined by bad motivations. See *id.* The Court in *Whren* addressed the argument that "an officer's motive invalidates objectively justifiable behavior under the Fourth Amendment," *id.*, but was not called upon to consider the definition of an "officer." In other words, the Court was explaining *how* the Fourth Amendment should be applied, not to *whom* it applied.

deputy sheriffs, must be regarded as having acted under color of state law. *Id.* at 1075; see also 506 U.S. at 60–61 n. 6, 113 S.Ct. at 543 n. 6. The facts of *Soldal,* though, are easily distinguished from Shahid's case. In *Soldal,* deputy sheriffs stood at the scene of an eviction being performed by a landlord's employees, in order to ensure that the eviction took place without incident. 506 U.S. at 58–59, 113 S.Ct. at 541–42, 942 F.2d at 1074. One of the deputy sheriffs even informed the tenant that "he was there to see that [the tenant] didn't interfere" with the eviction. 506 U.S. at 58, 113 S.Ct. at 541. By contrast, Marion County deputy sheriffs were not present and provided no assistance or encouragement whatsoever when the mall security officers decided to stop and search Shahid.

Shahid also cites the principle set out in *Feffer* that "[t]he government may not do, through a private individual, that which it is otherwise forbidden to do." *Feffer,* 831 F.2d at 737. The Court in *Feffer,* however, expounded on that principle by describing situations where the government knew of and acquiesced in the private party's conduct. See *id.* at 738. In those situations, the private party would expect some benefit (*e.g.,* receiving a reward from the government) from taking the action, or expect some detriment (*e.g.,* getting in trouble with government authorities) from not acting. See *id.* In other words, the private party in those circumstances was "induced to conduct a private search [or seizure] by some government action." *Koenig,* 856 F.2d at 850. By contrast, the record in this case does not indicate that the mall security officers would have expected any benefit or detriment from the government as a result of their actions. So far as the record shows, the security officers were trying to fulfill their duties to their employer and to the tenants and patrons of the mall. The government cannot be said to have induced the mall security officers to stop and search Shahid.

Shahid attempts to turn the Sheriff's Department's absence of control over the security officers to his advantage. He argues that security officers act as, and in the place of, law enforcement officers at Castleton Square Mall. In Shahid's view, the Sheriff's Department allows security officers to act, in effect, as government officers on mall property. Shahid deduces that searches or seizures that would be unconstitutional if performed by a deputy sheriff are also unconstitutional if performed by a mall security officer.

Shahid's argument is basically that the Sheriff's Department had delegated to the mall security officers a public function which was "traditionally the exclusive prerogative of the State," and that the security officers were therefore state actors. See, *e.g., Rendell–Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (quotation omitted). However, we have recently held that a private security guard who "was employed to provide security for [Chicago Housing Authority] residents and was thereby authorized to carry a handgun, arrest people for criminal trespass pending arrival of the police, and use deadly force in self-defense" did not have powers that have been exclusively reserved to the police, and was not a state actor. *Wade v. Byles,* 83 F.3d 902, 906 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 311, 136 L.Ed.2d 227.[2]

█ We see no reason to reach a different conclusion in this case. As observed earlier, we concluded in *Koenig* that the "happy coincidence" that both private citizens and police officers try to prevent crime "does not make a private actor an arm of the government." *Koenig,* 856 F.2d at 851. Shahid might have a fair argument if the mall security agency were the *de facto* or *de jure* law enforcement agency for the Castleton Square Mall. Cf. *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) (company-owned town subject to First and

---

**2.** As this Court has also noted, the Eighth Circuit recently rejected the contention that private parties were subject to the Fourth Amendment " 'simply because they were engaged in the "public function" of law enforcement.' " *United States v. D.F.,* 63 F.3d 671, 683 n. 17 (7th Cir. 1995) (quoting *United States v. Garlock,* 19 F.3d 441, 443 (8th Cir.1994)), vacated on other grounds, —— U.S. ——, 116 S.Ct. 1872, 135 L.Ed.2d 169. Other Circuits have made similar determinations. *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1457 (10th Cir. 1995); *White v. Scrivner Corp.,* 594 F.2d 140, 142–43 (5th Cir.1979).

Fourteenth Amendments).[3] The evidence at the suppression hearing shows that the Marion County Sheriff's Department generally did not patrol the mall property, aside from looking for parking violations in the outdoor parking area. However, this fact does not mean that the Sheriff's Department did not function as the law enforcement agency for that area of its jurisdiction (i.e., that portion of Marion County on which the mall is located), just as it presumably was for other private property in the county. Absent evidence to the contrary, the Marion County Sheriff's Department, and not mall security, should be presumed to be the local law enforcement agency to which the Fourth Amendment applies.

Shahid's remaining contention is that a decision against him would have repercussions for patrons at thousands of shopping centers throughout the United States. However, our decision does not foreclose arguments that, in particular circumstances, a shopping mall security officer has acted as an instrument or agent of the government. See *Koenig*, 856 F.2d at 847 (the analysis must be made "on a case-by-case basis and in light of all of the circumstances"); *Feffer*, 831 F.2d at 739 (same). Furthermore, even those who lack the protection of the Fourth Amendment against a mall security officer would not lack legal remedies against abuses by the security officer (*e.g.*, a state law false arrest claim). See, *e.g.*, *Duvall v. Kroger Co.*, 549 N.E.2d 403 (Ind.Ct.App.1990); *Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513, 519 (Ind.Ct.App.1989); *Adams v. Zayre Corp.*, 148 Ill.App.3d 704, 102 Ill.Dec. 121, 127, 499 N.E.2d 678, 684 (1986); *Johnson v. K–Mart Enterprises, Inc.*, 98 Wis.2d 533, 297 N.W.2d 74 (App.1980).

The judgment of the district court is affirmed.

**3.** Shahid suggests that *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741, imposes state-actor status on shopping centers with respect to constitutional rights, including those protected by the Fourth Amendment. But *PruneYard* stands for no such proposition. To the contrary, *PruneYard* restates the

holding in *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131, that a privately owned shopping center does not violate the First Amendment by prohibiting distribution of handbills. *PruneYard,* 447 U.S. at 80–81, 100 S.Ct. at 2040–41.