## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2009-NMSC-045

Filing Date:  August 31, 2009

Docket No. 30,953

STATE OF NEW MEXICO,

      Plaintiff-Petitioner,

v.

LUIS SANTIAGO,

      Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
JK Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**BOSSON, Justice.**

**{1}**    We consider whether a search performed by private security guards at a privately owned shopping mall is subject to the Fourth Amendment and, if so, whether evidence discovered during the search should be excluded as the fruit of an unreasonable search and seizure.  Because we hold that the Fourth Amendment does not apply, we reverse the Court of Appeals and remand for further proceedings.

**BACKGROUND**

1

**{2}** On July 20, 2005, Defendant Luis Santiago was involved in a verbal altercation at the Coronado Mall in Albuquerque. Security guards quickly responded to reports of the fight and tried to stop Defendant as he was leaving the mall. Security guard Ryan Martin testified that he saw Defendant run out from the main entrance doors while being followed by Richard Timmons, another security guard. Defendant stopped when he saw Martin and turned back toward Timmons with an "aggressive stance." In response, Timmons attempted to mace Defendant but missed. Then, Martin successfully maced Defendant and forced him to the ground, where Defendant received a cut to his chin from the impact. The security guards pinned Defendant to the ground and handcuffed him. The trial court found, despite conflicting testimony, that the security guards searched Defendant by reaching inside his pockets and removing several items, including a pill bottle. Defendant testified, and Martin's written statement confirms, that the security guards opened the pill bottle and discovered approximately four grams of cocaine inside.

**{3}** Shortly after the security guards subdued Defendant, two officers from the Albuquerque Police Department (APD) responded to the scene. When they arrived, Defendant was handcuffed and lying face down on the concrete. Detective Arbogast testified that after collecting the items on the ground that had been removed from Defendant's pockets, he picked Defendant up and escorted him to the back of a waiting police car. As they were walking, Defendant allegedly made statements to Detective Arbogast concerning the pill bottle and its contents. The record conflicts on when the police officers opened the pill bottle. Detective Arbogast stated that he opened the bottle at the police substation; Officer Newbill stated that Detective Arbogast approached him with the bottle while the officers were still at the mall, opened it, and both officers viewed five baggies of white powder inside. The officers transported Defendant to the police substation located at the mall and tested the substance in the pill bottle, confirming that it was cocaine.

**{4}** Defendant moved to suppress the cocaine and his inculpatory statements. At the suppression hearing on March 10, 2006, the district court heard testimony from the two APD officers and from security guard Martin. Martin testified that he and Timmons were employed by Valor Security, a private security company that provides security services to the Coronado Mall. Over three months later, on June 12, 2006, Defendant testified and contradicted some of the factual evidence offered by the State. The district court granted Defendant's motion and suppressed both the cocaine and Defendant's inculpatory statements as a fruit of the poisonous tree. The Court of Appeals upheld the suppression, holding that the security guards were state actors and subject to the restrictions of the Fourth Amendment.

**DISCUSSION**

**{5}** The Fourth Amendment prohibits unreasonable searches and seizures by government actors. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921). To redress and deter violations of the Fourth Amendment, courts apply the exclusionary rule and will suppress evidence obtained as fruit of an unconstitutional search or seizure. *Wong Sun v. United States*, 371

U.S. 471, 485 (1963). "Since there must be government instigation or influence to trigger constitutional protections against improper search, seizure and questioning, the rule has generally been held inapplicable to evidence obtained by a person acting solely in a private capacity." Steven Euller, *Private Security and the Exclusionary Rule*, 15 Harv. C.R.-C.L. L. Rev. 649, 649 (1980) (footnotes omitted); *see also Illinois v. Krull*, 480 U.S. 340, 347 (1987) ("[T]he 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" (Quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974).)); *United States v. Smythe*, 84 F.3d 1240, 1242 (10th Cir. 1996) ("Fourth Amendment protection against unreasonable searches and seizures 'is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual.'" (Quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).)); *State v. Murillo*, 113 N.M. 186, 188, 824 P.2d 326, 328 (Ct. App. 1991) (accepting the long-standing rule that the protections of the Fourth Amendment do not apply to private individuals acting for their own purposes). Accordingly, courts have routinely held that the Fourth Amendment is not implicated and suppression is unwarranted "'when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor.'" *Smythe*, 84 F.3d at 1243 (quoting *Pleasant v. Lovell*, 876 F.2d 787, 797 (10th Cir.1989)).

**{6}**     "At the core of the reasoning underlying this refusal to extend application of the exclusionary rule to private searches is the concept of 'state action,' the understanding that the Fourth Amendment operates only in the context of the relationship between the citizen and the state." *Commonwealth v. Corley*, 491 A.2d 829, 830 (Pa. 1985) (holding that the exclusionary rule is not available to suppress evidence obtained by a private store security guard during a search incident to a citizen's arrest). However, under certain limited circumstances, our courts have recognized that a search or seizure by a private citizen may be imputed to the government, thereby implicating the Fourth Amendment. *See Murillo*, 113 N.M. at 189, 824 P.2d at 329. Courts employ the "state action" doctrine to determine "whether there is a sufficiently close nexus between the State and the challenged action of the [private actor] so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974). As the Supreme Court noted, the state action requirement "avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) .

**{7}**     In *Lugar*, the U.S. Supreme Court set forth a two-part framework to evaluate whether state action is present. 457 U.S. at 939 (finding state action for the petitioner's 42 U.S.C. § 1983 (2000) civil rights claim where the respondent, pursuant to state statute, used judicial process and sheriff to secure a prejudgement attachment of the petitioner's property). Under the *Lugar* test, state action is present if the deprivation of a federal right or privilege was caused by (1) "the exercise of a right or privilege having its source in state authority," 457 U.S. at 939, and (2) "the party charged with the deprivation [is] a person who may fairly be said to be a state actor," *id.* at 937. *See also LaBalbo v. Hymes*, 115 N.M. 314, 319, 850

3

P.2d 1017, 1022 (Ct. App. 1993) (adopting the *Lugar* test, as set forth in *West v. Atkins*, 487 U.S. 42, 49-50 (1988), to evaluate whether a private entity under state contract who provided services to mentally disabled persons may be a state actor for purposes of a § 1983 civil rights claim). If the state action test is satisfied, the fruits of the search may be suppressed.

{8}    In this case, Defendant contends that the mall security guards were state actors, and that their actions were subject to the Fourth Amendment and the exclusionary rule.[1]  The Court of Appeals concluded that the security guards acted on behalf of APD by applying three different tests. We evaluate each below.

**Murillo/Hernandez Test**

{9}    Our Court of Appeals has previously addressed the applicability of the Fourth Amendment to private  security guards. *See Murilllo*, 113 N.M. 186, 824 P.2d 326. In *Murillo*, a private security guard, Mike Gonzales, responded to a call at a local motel on suspicion that a suspect was carrying a gun. *Id.* at 187-88, 824 P.2d at 327-28. Gonzales also worked as an investigator for the district attorney's office, but was off duty at the time he encountered the suspect. *Id.* at 187, 824 P.2d at 327. Gonzales was acquainted with the suspect, and at some point during their interaction, Gonzales patted the suspect's shirt pocket and discovered "bindles" of cocaine. *Id.* at 188, 824 P.2d at 328. The suspect moved to suppress the evidence, arguing that the Fourth Amendment "applied to the encounter because Gonzales was a full-time, commissioned law enforcement officer investigating a potential felony offense." *Id.*

{10}    The Court of Appeals stated that generally, "[t]he burden of establishing government involvement in a search by a privately employed individual rests with the defendant." *Id.* at 190-91, 824 P.2d at 330-31. However, the Court noted that "a commissioned [law enforcement] officer may have additional incentive to obtain a conviction by ignoring a suspect's constitutional rights." *Id.* at 191, 824 P.2d at 331. Thus, if the search is conducted by a publicly commissioned officer, even if privately employed, "the burden [of persuasion] must shift to the state to show the officer was acting in a truly private capacity." *Id.*

{11}    To determine whether an off-duty, publicly commissioned officer is acting in a purely private capacity, the Court of Appeals cited a four-factor test set forth in *Commonwealth v. Leone*, 435 N.E.2d 1036, 1041-42 (Mass. 1982). *Leone*, like *Murillo*, explored the application of the Fourth Amendment to an investigation by an off-duty special police officer who was also privately employed as a security guard. *Leone*, 435 N.E.2d at 1037. In *Leone*, the Massachusetts court set forth a four-part test to determine whether a security guard's actions are in furtherance of his private employer's interests, or whether they could instead be attributed to the state. Those four factors are: (1) whether the guard acted under the control of his private employer; (2) whether the guard's actions clearly

---

[1]Defendant has not asserted a claim under the New Mexico Constitution.

related to his private employer's private purposes; (3) whether the search was conducted as a legitimate means of protecting the employer's private property; and (4) whether the methods and manner of the search were reasonable and no more intrusive than necessary. *Id.* at 1041-42.

**{12}** In their arguments to the district court in the present case, both the State and Defendant relied on *Murillo*, and that court based its findings and conclusions largely on the *Murillo/Leone* factors. Likewise, the Court of Appeals also applied *Murillo* and *Leone*, but noted that the security guards at the Coronado Mall were not also police officers and, therefore, "the factors to be considered by *Murillo* are helpful, [but] they are not dispositive." *State v. Santiago*, 2008-NMCA-041, ¶ 11, 143 N.M. 756, 182 P.3d 137. Despite this significant difference with *Murillo*, the Court of Appeals did not clearly indicate that the burden of persuasion remained with Defendant to show that the security guards were state actors. *Id.*

**{13}** In our view, the parties' reliance upon *Murillo* is misplaced, in light of the Court of Appeals' more recent holding in *State v. Hernandez*, 116 N.M. 562, 865 P.2d 1206 (Ct. App. 1993). In *Hernandez*, a store security guard sought out and detained the accused on suspicion of committing auto burglary in the store parking lot. *Id.* at 563, 865 P.2d at 1207. The accused moved to suppress on the ground that the security guard "was performing a 'public function,' thereby triggering Constitutional safeguards." *Id.* at 565, 865 P.2d at 1209. The Court of Appeals distinguished *Hernandez* from *Murillo* by noting that the security guard in *Hernandez* was not also a publicly commissioned officer. *Id.* Accordingly, the Court held that the accused retained the burden to show that the security guard was acting as an agent or instrument of the government. *Id.*

**{14}** Although *Hernandez* was decided two years after *Murillo*, neither the Court of Appeals nor either party here discussed its holding. *But see Santiago*, 2008-NMCA-041, ¶ 37 (Wechsler, J., specially concurring). As a result, the record does not indicate that the burden of persuasion was properly attributed to Defendant in this case. Security guard Martin testified that he worked for a private security company, and that he was not also a police officer. The record is silent as to Timmons. Without any evidence that either security guard was also a publicly commissioned officer—as was the security guard in *Murillo*—the burden remained with Defendant to establish that Martin and Timmons were acting in a non-private capacity at the time of the search. *See Hernandez*, 116 N.M. at 565, 865 P.2d at 1209.

**{15}** Moreover, we are not persuaded that the *Murillo/Leone* factors are relevant to resolve the state action question in this case. By its facts, *Murillo* applies to a narrow class of cases where a private security guard is also a commissioned law enforcement officer. As the *Leone* court noted, "a State officer privately employed as a security guard is bound to comply with the Fourth Amendment when performing investigatory duties," *Leone*, 435 N.E.2d at 1040, but that same guard does not violate the Fourth Amendment when "[he conducts an investigation] on behalf of the private employer, in a manner that is reasonable

5

and necessary for protection of the employer's property," *id.* at 1041. Thus, the Court of Appeals correctly stated that the four *Leone* factors are useful criteria to determine whether an *officer* acted in a truly *private capacity* at the time of the search or seizure. *Murillo*, 113 N.M. at 191, 824 P.2d at 331.

**{16}** However, in cases when a private security guard is not also a commissioned law enforcement officer, it is not necessary to determine, as between the state or the private security firm, which employer the guard is serving when he performs a search or seizure. When private security guards lack such additional law enforcement connections, the agency test—and not the *Murrillo/Leone* factors—offers a better approach to determine whether the Fourth Amendment requires suppression of the evidence.

**Agency**

**{17}** Like many jurisdictions, our courts have recognized that the Fourth Amendment may apply to searches conducted by a private party who is acting as an instrument or agent of the state. *See Murillo*, 113 N.M. at 189, 824 P.2d at 329. In such cases, federal courts have recognized that "a search by a private citizen may be transformed into a governmental search implicating the Fourth Amendment 'if the government coerces, dominates or directs the actions of a private person'" conducting the search or seizure. *Smythe*, 84 F.3d at 1242 (quoting *Pleasant*, 876 F.2d at 796).

**{18}** To determine whether a private person is acting as an agent or instrumentality of the government, most federal courts consider (1) whether "'the government knew of and acquiesced in the intrusive conduct,'" and (2) whether "'the party performing the search intended to assist law enforcement efforts or to further his own ends.'" *Smythe*, 84 F.3d at 1242-43 (quoting *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982)); *accord United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006); *United States v. Jarrett*, 338 F.3d 339, 345 (4th Cir. 2003); *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003); *United States v. Young*, 153 F.3d 1079, 1080 (9th Cir. 1998); *United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997); *United States v. Jenkins*, 46 F.3d 447, 460 (5th Cir. 1995); *United States v. Malbrough*, 922 F.2d 458, 462 (8th Cir. 1990); *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). This Court has not had occasion to address the elements of the agency test. However, it appears that federal courts have fairly addressed the matter, and therefore, we adopt the federal formulation. Because the subject is new to our state, we remain open to further refinements.

**{19}** Applying the first factor, we inquire whether the police knew of or acquiesced in the search performed by the security guards at Coronado Mall. This factor looks at the actual relationship between the private guards and the police, and requires that the state exercise a degree of control over the private actors. *See Shahid*, 117 F.3d at 325. Federal courts consider whether the private actor performed the search at the request of the government, or whether the government otherwise initiated, instigated, orchestrated, encouraged, or participated in the search. *See Smythe*, 84 F.3d at 1243. The analysis is made "'on a

6

case-by-case basis and in light of all of the circumstances.'" *Shahid*, 117 F.3d at 325 (quoting *United States v. Koenig*, 856 F.2d 843, 847 (7th Cir. 1988)).

**{20}**    In the present case, the police were called during the altercation with Defendant and arrived shortly after the private security guards had restrained and searched Defendant. The police were not present during the search or before, and nothing in the record indicates that the police requested, encouraged, or otherwise participated in the search. We agree that such "[a]fter-the-fact knowledge and acquiescence by law enforcement cannot transform the relationship between the employees and the police into an agency relationship. There must be some evidence of the [sic] government participation in the private search or affirmative encouragement." *United States v. Story*, 2009 U.S. App. LEXIS 9503, at *3 (4th Cir. May 1, 2009)[2]; *Koenig*, 856 F.2d at 850 ("Mere knowledge of another's independent action, [sic] does not produce vicarious responsibility absent some manifestation of consent and the ability to control.").

**{21}**    The Court of Appeals, however, relied on a broader and more general relationship between the security guards and APD, including the presence of a police substation at Coronado Mall and evidence that security guards and APD shared a radio frequency. APD Detective Newbill testified that security guards routinely performed pat-down searches when they detained suspects. Security guard Martin stated that he would always pat down a suspect to search for weapons when there had been a physical confrontation. In addition, Martin testified that guards generally would detain a suspect until the police arrived so that APD could issue a criminal trespass notification to prevent the suspect from returning to the mall.

**{22}**    Clearly, the record shows an awareness that security guards were performing protective searches. However, this falls short of satisfying the criteria for an agency relationship. *See Shahid*, 117 F.3d at 325 ("[T]he Sheriff's Department's general knowledge of the activities at the mall did not transform the mall security officers into agents of the Sheriff's Department in all cases.").

**{23}**    It might be different, for example, if APD officers had encouraged mall security guards, in their capacity as private actors, to perform searches and to obtain evidence for use by the state, particularly under circumstances in which the police could not lawfully conduct the search themselves. Likewise, if security guards had routinely exceeded the permissible scope of protective searches, and if the record showed that police officers knew of that practice and condoned or participated in it, or even failed to discourage it, those facts might indicate a different outcome. Similarly, if the security guards were acting under the direction of APD, then state action would likely follow. Other scenarios come to mind. But in this

---

[2]Pursuant to Rule 32.1(A) of the Federal Rules of Appellate Procedure, local rules for the Fourth Circuit Court of Appeals, citation to unpublished opinions is permitted for all opinions issued on or after January 1, 2007.

7

particular case, there is no evidence of this kind of active participation by law enforcement officials in private security guard activity. In the context of this motion to suppress, the record is simply not developed as to any relationship between the security guards and APD. On this bare record, the alleged agency cannot be anything more than speculation.

**{24}** Turning to the second factor, we consider "'whether the party performing the search intended to assist law enforcement efforts or to further his own ends.'" *United States v. Leffall*, 82 F.3d 343, 347 (10th Cir. 1996) (quoting *Pleasant*, 876 F.2d at 797). The paramount consideration is whether the private actor had an independent motivation for conducting the search or seizure beyond assisting law enforcement. *See Smythe*, 84 F.3d at 1243; *Leffall*, 82 F.3d at 347; *United States v. McAllister*, 18 F.3d 1412, 1418 (7th Cir. 1994) ("That a [private party] might *also* have intended to assist law enforcement does not transform him into a government agent so long as the private party has had a legitimate independent motivation for engaging in the challenged conduct." (Internal quotation marks and citation omitted.)). As our Court of Appeals stated in *Hernandez*, "cooperating with and assisting law enforcement personnel [are] duties . . . common to almost all private security personnel, [and] do not suffice to make a private security guard an agent of the state whose acts are subject to constitutional restraints." *Hernandez*, 116 N.M. at 565, 865 P.2d at 1209; *see also United States v. Jackson*, 617 F.Supp.2d 316, 326 (M.D. Pa. 2008) ("Where the private citizen is motivated both to assist the government and to further his or her own objectives, the private citizen is not acting as an agent of the government." (Citing *United States v. Cleaveland*, 38 F.3d 1092, 1094 (9th Cir. 1994).)).

**{25}** In evaluating the security guards' motivation in this case, we note that private security guards are privileged to detain and question suspects under limited circumstances. *See State v. Johnson*, 1996-NMSC-075, ¶ 7, 122 N.M. 696, 930 P.2d 1148; NMSA 1978, § 61-27B-10(B) (2007); *see also Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 639 (6th Cir. 2005). To the extent that security guards exercise this privilege to prevent theft of property at a shopping center, those actions can reasonably be construed to serve the interests of their private employer. *See Hernandez*, 116 N.M. at 565, 865 P.2d at 1209 ("It is undoubtedly in the interest of a private retail business that potential patrons believe that they will not be victimized by crime while shopping at the business."). Thus, we assume the security guards in this case were privileged to detain and question Defendant, and to perform a protective search for weapons.[3] If shoplifting had been suspected, the guards could have

---

[3]As we discuss below, private security guards have no statutory authority to arrest criminal suspects for breaches of the peace. However, like other citizens, security guards may execute a citizen's arrest for a breach of the peace committed in their presence, and may use reasonable force to stop and detain the suspect. *See Johnson*, 1996-NMSC-075, ¶ 7. Nevertheless, as we stated in *Johnson*, "[u]nder Section 132 of the Restatement (Second) of Torts, the use of force for the purpose of effecting a citizen's arrest 'is not privileged' if the means employed are 'in excess of those which the actor reasonably believes to be necessary.' We adopt a requirement that includes the objective-person standard in order to ensure

8

searched to retrieve store property. However, such a limited privilege does not translate into a search for *evidence* of an unrelated crime.

**{26}**     According to the guards, Defendant was suspected of fighting, not shoplifting. They had no authority to search for evidence of a crime in this case. When the guards reached into Defendant's pockets, removed the pill bottle and then opened it, they ceased to further the interests of their private employer, and the record does not indicate any independent motivation or justification for doing so. Accordingly, these acts indicate an intention to assist law enforcement efforts by securing evidence of a drug crime. However, even if Defendant satisfies the second prong of the agency test—serving the interests of law enforcement—he may still fail to establish the first prong—proving that the state knew of and acquiesced in the conduct.

**{27}**     Both parts of the test must be established. The Seventh Circuit Court of Appeals has noted that

> the test's second prong . . . does not mean that the court simply evaluates the private person's state of mind—whether his motive to aid law enforcement preponderates. Almost always a private individual making a search will be pursuing his own ends—even if only to satisfy curiosity—although he may have a strong intent to aid law enforcement. We hold this part of the test also requires that the court weigh the government's role in the search. A government agent must be involved either directly as a participant—not merely as a witness—or indirectly as an *encourager* of the private person's search before we will deem the person to be an instrument of the government.

*Leffall*, 82 F.3d at 347 (emphasis added).

**{28}**     The security guards' unilateral action in this case cannot be attributed to the State. Merely accepting the evidentiary fruits, without more, does not constitute ratification of the security guards' conduct. *See United States v. Gumerlock*, 590 F.2d 794, 800 n.19 (9th Cir. 1979) ("*Gambino* [*v. United States*, 275 U.S. 310 (1927)] did not involve a *unilateral* private purpose to assist the government. Rather, state and federal officials had developed a course of cooperation in enforcing the liquor laws that ensuing federal prosecution was in effect a 'ratification' of the prior state search and seizure."). Without evidence of greater police involvement prior to the completion of the search, whether generally as a matter of practice or specifically concerning the facts of this case, the record does not support a finding of agency. Thus, the Fourth Amendment does not apply to the private security guards at the Coronado Mall based on the present record.

---

good-faith, objectively-reasonable behavior." *Id.* ¶ 18 n.3. We need not decide whether the security guards' use of force in this case was objectively reasonable.

**State Action and the Public Function Doctrine**

**{29}**     The Court of Appeals also held that the mall security guards can be characterized as state actors under the "public function" doctrine because they were performing public, police functions. *Santiago*, 2008-NMCA-041, ¶¶ 19, 23-24 (citing *People v. Elliott*, 501 N.Y.S.2d 265, 269 (Sup. Ct. 1986)). Whereas the agency test looks at the relationship between the private actor and the government, "[t]he public function strand of state action theory states that when a private citizen performs tasks and exercises powers that are traditionally governmental in nature, he will be treated as a government actor. He will be subject to the same restrictions as the government, even in the absence of direct contact between him and a government official or agency." Euller, *supra*, at 657 (citing *Marsh v. Alabama*, 326 U.S. 501 (1946)).

**{30}**     Under the public-function test, a private entity may become a state actor by the exercise of "powers traditionally exclusively reserved to the State," either by express delegation or by assumption. *See Metro. Edison Co.*, 419 U.S. at 352. Although a number of cases have addressed the public-function doctrine, courts have applied the doctrine narrowly. Because relatively few functions have been deemed exclusive to the state, it is more difficult to establish state action with this doctrine. *See, e.g.*, *Evans v. Newton*, 382 U.S. 296 (1966) (operation of a municipal park); *Terry v. Adams*, 345 U.S. 461, 468-70 (1953) (election of public officials); *Marsh*, 326 U.S. at 502 (operation of a company-owned town); *see also Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995) ("This test is difficult to satisfy. While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State." (Internal quotation marks and citations omitted.)).

**{31}**     The public-function doctrine is most frequently cited in civil rights cases under 42 U.S.C. § 1983. *See Duran v. N.M. Monitored Treatment Program*, 2000-NMCA-023, ¶ 21, 128 N.M. 659, 996 P.2d 922 (considering whether a "private party's actions can be characterized as state action . . . under the 'public function' doctrine" for purposes of a doctor's § 1983 civil rights claims against an addiction recovery clinic). Our courts have not previously applied the public-function doctrine in the context of the Fourth Amendment, and we have found only limited authority from other jurisdictions that have done so. *See, e.g.*, *People v. Zelinski*, 594 P.2d 1000, 1006 (Cal. 1979) (in bank) (holding that department store security guard conducted an illegal search and seizure in violation of Article 1, Section 13 of the California Constitution), *superseded by* Cal. Const. art. I, § 28(f)(2); *Finger v. State*, 799 N.E.2d 528, 532 (Ind. 2003) (stating that "[a] private entity is deemed a state actor when the state delegates to it a traditionally public function" and holding that a statutory delegation of police powers rendered a university police officer a state actor subject to Fourth Amendment restrictions on searches and seizures); *People v. Stormer*, 518 N.Y.S.2d 351, 353 (Co. Ct. 1987) (suppressing evidence pursuant to the Fourth Amendment and the New York Constitution where a private security force acted as an exclusive police force for hotel on a private island and performed a search of the defendant's car).

**{32}** In addition, there is a split of authority as to whether law enforcement is a function traditionally and exclusively reserved to the state. In some jurisdictions, courts have recognized that certain police powers are not *exclusive* to the state and, therefore, do not necessarily amount to state action when performed by a private citizen. *See, e.g.*, *Wade v. Byles*, 83 F.3d 902, 905-06 (7th Cir. 1996) (holding that the defendant's "function as a lobby security guard with . . . limited powers is not traditionally the exclusive prerogative of the state"). The common-law citizen's arrest and the shopkeeper's privilege, for example, are limited police powers that are shared between private citizens and law enforcement officers. *Id.* (stating that the power to "carry a handgun, arrest people for criminal trespass pending arrival of the police, and use deadly force in self-defense [are] powers [that] have been traditionally exercised by the sovereign via the police, [but] none has been *exclusively* reserved to the police"); *Gallagher,* 49 F.3d at 1457 (holding that private security guards performing pat-down searches at a government facility were not engaging in a traditional and exclusive state function); *White v. Scrivner Corp.*, 594 F.2d 140, 140 (5th Cir. 1979) (holding that store employees did not perform public functions in detaining "suspected shoplifters, in searching their purses, and [in] detaining them after [the] gun was found").

**{33}** Other courts, however, have held that store security guards engage in a public function, and are therefore state actors, when they arrest and search suspects. *See, e.g.*, *Romanski*, 428 F.3d at 637 ("Where private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test."); *Zelinski*, 594 P.2d at 1005 ("[T]he store security forces . . . were fulfilling a public function in bringing violators of the law to public justice."). However, the private security guards in these cases were authorized by statute to perform these functions and, thus, acted pursuant to the state's delegation of its police powers. *See Romanski*, 428 F.3d at 637 (casino security guards were state actors for purposes of § 1983 where they were authorized by Michigan statute to execute an arrest without a warrant); *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627-28 (7th Cir. 1999) (hospital security personnel were state actors for purposes of § 1983 where guards were special police officers who, by statute, possessed the powers of the regular police patrol); *United States v. Day*, 590 F. Supp. 2d 796, 800 (E.D. Va. 2008) (relying on § 1983 cases, the court held that private security guards, authorized under Virginia statute to "effect an arrest for an offense occurring . . . in [their] presence," were state actors for purposes of Fourth Amendment (internal quotation marks and citation omitted)).

**{34}** Although our Court of Appeals noted in *Murillo*, 113 N.M. at 189, 824 P.2d at 329, that "[s]ecurity personnel hired to protect private business premises are performing traditional police functions when they arrest, question, and search for evidence against criminal suspects," not every exercise of police power amounts to the performance of a public function in a state action analysis. We begin our "public function" analysis in this case by determining whether the security guards were acting pursuant to an express delegation of state authority. *See Duran*, 2000-NMCA-023, ¶ 21 (citing *LaBalbo*, 115 N.M. at 319, 850 P.2d at 1022); *see also Metro. Edison Co.*, 419 U.S. at 352-53 (indicating that state action may be present pursuant to the public function doctrine if the defendant were

exercising "some power delegated to it by the State which is traditionally associated with sovereignty, such as eminent domain").

**{35}** In contrast to other jurisdictions that have delegated police powers to private security guards, the New Mexico Legislature has *not* granted private security guards broad police powers, nor has it authorized private security personnel to arrest criminal suspects. Rather, the Legislature expressly stated that security guards "may *not* investigate acts except those that are incidental to a theft, embezzlement, loss, misappropriation or concealment of property or other item that the [security guard] has been engaged or hired to protect, guard or watch." Section 61-27B-10(B) (recompiled from Section 61-27A-13(H) (1993)) (emphasis added). The limited scope of this authority indicates that the state did not intend to share its police powers with private security employees. *Cf.* NMSA 1978, § 31-3-4(B) (1972) (authorizing a bondsman to "arrest the accused and deliver him to the sheriff of the county in which the action against the accused is pending" to be discharged from the obligation of his bond). Without an express statutory delegation of the power to arrest, security guards are limited to the lawful exercise of a common-law citizen's arrest. *Johnson*, 1996-NMSC-075, ¶ 6 (stating that individuals have a narrow common-law right to execute a citizen's arrest "'for a breach of the peace committed in his presence, as well as for a felony'" (quoting *Downs v. Garay*, 106 N.M. 321, 323, 742 P.2d 533, 535 (Ct. App. 1987))); *see also Carey v. Continental Airlines, Inc*., 823 F.2d 1402, 1404 (10th Cir. 1987) (holding citizen's arrest does not constitute state action).

**{36}** Even without a statutory delegation of authority, courts have found state action via the public function doctrine where a private entity has "captured and replaced the traditional activities of the state." Chester James Antieau & William J. Rich, *Modern Constitutional Law* § 26.10, at 38 (2d ed. 1997); *cf. Marsh*, 326 U.S. at 506. As the Seventh Circuit Court of Appeals observed in a similar case, the defendant might be able to demonstrate this kind of state action if the mall security guards "were the *de facto* or *de jure* law enforcement agency for the . . . [m]all." *Shahid*, 117 F.3d at 327 (citing *Marsh*, 326 U.S. at 501). However, even if we were to follow the reasoning of the Seventh Circuit, the record does not support such a conclusion here. Rather than being displaced by private security guards, APD maintained full presence and responsibility with respect to criminal conduct at the mall. APD located a police substation at the mall, and APD officers routinely responded to calls from mall security guards to issue citations and process criminal arrests. Mall security guards operated under a limited authority pertaining to property theft and maintaining order.[4]

**{37}** Although we share the Court of Appeals' concern regarding the potential for abuse by private security guards, especially given the ubiquity of shopping malls in modern life, the limited record in this case cannot support that Court's conclusion to apply the Fourth Amendment to the security guards' conduct in this case. Defendant, if proven to be the

---

[4]The record does not contain sufficient evidence to establish the full scope of the guards' duties pursuant to their employment with Valor Security.

victim of such abuse, is not without legal remedies, as private actors who exceed their lawful authority are not shielded from civil or even criminal liability. But without more evidence than presented in this case, any sins of the private security guards cannot be imputed to the state. Defendant has not established a constitutional basis to suppress the evidence obtained against him by private security guards, acting on their own, under the Fourth Amendment.

**CONCLUSION**

**{38}** We reverse the Court of Appeals. We remand to the district court to address all remaining issues and for further proceedings.[5]

**{39}** **IT IS SO ORDERED.**

_____

**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Santiago*, No. 30,953**

| **AE** | **Appeal and Error** |
|---|---|
| AE-SB | Substantial or Sufficient Evidence |

---

[5]We do not decide whether APD violated the Fourth Amendment by reopening Defendant's container after the security guards had opened it initially. *See State v. Rivera*, 2008-NMSC-056, ¶¶ 3-4, 144 N.M. 836, 192 P.3d 1213 (addressing Sixth Amendment issues arising from reopening of package containing marijuana, pursuant to police instruction, after initial search by employee at bus station); *on remand*, 2009-NMCA-049, 146 N.M. 194, 207 P.3d 1171 (addressing Fourth Amendment issues related to private search), *cert. granted*, No. 31,656.

**CT**                     **Constitutional Law**
CT-FA            Fourth Amendment
CT-SU           Suppression of Evidence

**CA**                     **Criminal Procedure**
CA-CZ           Citizen's Arrest
CA-BP           Burden of Proof
CA-SZ           Search and Seizure
CA-SE           Substantial or Sufficient Evidence

**EV**                     **Evidence**
EV-EE           Exclusion of Evidence